We will hear argument this morning in Case No. 23-1039, Ames v. OH Dept. of Youth Services. Mr. Wang? Mr. Chief Justice, and may it please the Court, Marlene Ames has worked for the OH Dept. of Youth Services for over two decades, and in 2018, her year-end performance review described her as being very competent in her role, a pleasure to have on the team, and always willing to assist others. But in 2019, she experienced two adverse employment actions. First, she sought a promotion to Bureau Chief, for which she was qualified, for which she applied, and for which she interviewed. But neither she nor the two other heterosexual employees who applied and interviewed got the job. Instead, the job was held open for eight months before going to a gay employee who neither applied nor interviewed for the position. And second, Ms. Ames lost the job that she was in, and she lost it and was replaced by a separate gay employee who also did not apply or interview for the position. Based on these facts, the Sixth Circuit held that Ms. Ames had satisfied the usual requirements for stating a prima facie case of discrimination under Title VII, but she could not proceed because of the background circumstances rule, which the Sixth Circuit described as an additional showing unique to majority group plaintiffs. The narrow question before the court today is whether this judge-made rule is consistent with Title VII, and we submit that it is not. It's not because this court has said that Title VII aims to eradicate all discrimination in the workplace. But the background circumstances rule doesn't do that. It doesn't eradicate discrimination. It instructs courts to practice it by sorting individuals into majority and minority groups based on their race, their sex, or their gender, not in favor of, but against the non-moving party based solely on their being in a majority group, however you define it. But that's not consistent with the statute that tells us that we are supposed to protect all individuals from individual discrimination based on the individual case. And it's not consistent with McDonald v. Santa Fe Trail, where this court says that all individuals, whether in majority or minority groups, are protected by Title VII under the same terms and the same standards. For these reasons, we urge the court to reverse the judgment of the Sixth Circuit. I welcome the court's questions. What do you do with respondents' argument that this is merely an application of our precedence? I don't think it is an application of this court's precedence, Your Honor. And, Justice Thomas, it's because this court's precedence in McDonald v. Douglas lays out a framework, and then McDonald v. Santa Fe Trail says they apply to the same terms and same standards. But the background circumstances rule isn't the same term. It's not the same standard. The Sixth Circuit says it's an additional burden. And in prior cases, it says it's a difficult and more demanding burden on majority group plaintiffs. So I don't think it's consistent with this court's precedence. What if you have a situation where, say, 60 employees in the company, say, you know, a half dozen African Americans, an African American applies for a job, there's an opening, he doesn't get it, remains open for, you know, a couple of months. Does that satisfy the prima facie case? He said it was because of discrimination. Assuming that they are qualified and... Yeah, yeah, yeah. Yes. Okay. Now, I'm sorry, that's a yes? Yes, that is true. Okay. Now, let's say it's the same thing, but the applicant is white. Exactly the same facts. And she says, I was discriminated, I lost a job because of discrimination on the basis of race. Does that state a prima facie case? I think it states a prima facie case, but I think it goes, perhaps, Your Honor, it goes to the idea of getting employers to come forward with an explanation and then providing sort of legitimate non-discriminatory reason, which I don't think is a high burden at all. I think as Reeves, as Burdine, as Franco made clear, they just have to provide some sort of legitimate non-discriminatory reason to answer or to rebut the prima facie case. Can I just clarify the Chief's hypo though? In both situations, the job stays open for a few months, but then it is filled by a person of a different race. Is that right? I was under the understanding, under the Chief Justice's hypothetical, it remained open. It just remained open? Yeah. That's enough. My understanding too. That was my... Sorry. And I'm happy to answer an alternative. Yeah. Sorry. Sorry about that. No, no. Well, what if it was changed? That's a fair question. I guess my point is that the standard, the test for prima facie case, at least as I understood it, maybe I'm misunderstanding, is that you have to state circumstances that could give rise to a reason to believe that there is racial discrimination or discrimination of some sort. And I don't know, is that enough or do you have to say, and then it was filled by someone of another race and that is what then gives rise to the inference of discrimination? Well, let me try to unpack that in two ways. I think the first is whether when it's filled by someone of the same group or a different race or something, I think that that brings into the issue of whether there's a similarly situated comparator, which is a common analysis that takes place in most of the, I think, the lower courts when it comes to stating a prima facie case. If it's held open, though, I think that means that the prima facie case serves as an explanation forcing mechanism. It's just meant to bring the employer to the table, as Hicks says, to come forward with some sort of explanation. It's not supposed to be a heavy burden on the employer. I think naturally, as this court has pointed out, often it just happens anyway, in depositions or in other declarations. It's just asking the employer to come forward, provide some sort of explanation in order to continue the process of understanding whether discrimination occurred. I guess what I was just trying to get at, and I should have been clear that the position stays open, that in one case, I suppose, just because of the underlying facts, the assertion that this was discriminatory, it seems to me is more plausible than the assertion that it was discriminatory if everybody else in the company is white as well. But you're saying that you can't take that fact into account. I'm not saying you can't take the fact into account. What I'm saying is, with regard to the question presented, it becomes a categorical evidentiary presumption. I don't think that's fair. I think what we've said is that, look, these facts might give rise to a prima facie case of discrimination, and I think that the employer, of course, will come forward with a legitimate nondiscriminatory reason. And then when it comes to pretext, when it comes to the ultimate question of discrimination, one, of course, looks at all the facts that's before them. The question, I think, that is presented here is whether there's an additional burden specifically on majority group plaintiffs. I don't think that's consistent with either Title VII's text or this Court's precedent. Counsel, what do you have to say to the Department's contention that this is just going to throw the door wide open to Title VII suits, because now everybody can say, hey, this was discrimination on the basis of race, gender, et cetera? Well, I don't think that contention is well taken, Justice Barrett, and for two reasons. The first is this is an evidentiary question that arises at summary judgment. So they've already gotten past a discussion with the EEOC, plausibility under Iqbal and Twombly, a motion to dismiss. So I think if there were a floodgate issue, that would be sort of more on the pleading standards. I think the second point is merely sort of an empirical question. And as we lay out, and as Judge Kethledge lays out in his concurrence, about more than half the circuits don't apply the background circumstances rule. We don't see those circuits having some sort of flood of litigation. I don't think there's a huge delta between those circuits that apply it and those circuits that don't apply it, which I think goes to the narrow question that's before the Court today. In the circuits that don't apply it, I guess I was a little bit unclear about one of the points that you made to the Chief Justice. In the circuits that don't apply it, you said the fact of a particular person's particular race or whatever it is, gender or sexual orientation, can come into account as a circumstance. What did you mean by that? Yeah, I'm not sure. If I was a little bit unclear, let me try to clean that up a bit. I think what I meant is in the circuits that don't apply it, as the Third Circuit and the Eleventh Circuit lay out, they just take the McDonnell Douglas standard and they say, well, what sort of protected characteristic are you talking about? Is it adverse? Are you qualified? And did the job remain open or did you fill it with a similarly situated comparator? I think the question of, well, context mattering, I think that often comes in at steps two and three. It comes in once the employer comes forward. After you've settled the most common nondiscriminatory reasons, once the employer comes forward with the explanation, then, of course, that becomes more case-specific. And you talk about hiring patterns at the company, the makeup of the company. I think that, of course, all comes into play. And I think that comes into play in many of the lower courts. Mr. Wang, I'm going to ask you an unfair question. This case is proceeded on assumption that McDonnell Douglas applies at the summary judgment stage. And yet, this Court has never held that it applies at the summary judgment stage. What should we do or think about that? Well, Justice Gorsuch, I'm going to try to give you a fair answer to that question. And my sense is that all the parties here take McDonnell Douglas sort of as a given. And I think one sort of the first response, the first level response I'd have is, because we take it as a given, we're trying to focus just on this narrow question of whether this add-on to McDonnell Douglas in the common case is appropriate. So that's the first one. I think the second one is because the parties sort of take it as a given, it's not really the best vehicle to really reexamine it. Of course, as the Respondent points out, there is another case that's pending before this Court that could be granted that reexamines it. But I think maybe as a final point, whether you have McDonnell Douglas or not, there's still sort of this underlying question of, should you apply some sort of categorical evidentiary presumption against an individual based on being in a majority group? And I think the Court's opinion in Bostock says the answer should be no. That's why it was an unfair question, because nobody's asked us to do anything about it in this case. And I appreciate that. But you're standing at the podium, so what the heck, right? McDonnell Douglas was devised back when there were bench trials for these cases, and you passed that a long time ago. And at summary judgment, I had thought the standard a plaintiff needed to meet was just whether there was a material dispute of fact about a question of discrimination on an individual basis. Correct. But the McDonnell Douglas framework has three steps, none of which appear in summary judgment or in the statute. And the third step has really caught up a lot of plaintiffs, right? Having to show that the defendant's stated reasons for the adverse employment action are pretextual. Right. It could be that they are not pretextual, but there's still discrimination. Correct. Two causes, right? And normally we would think Title VII would capture any but-for cause. Correct. And so just thoughts about that. Yeah, I don't want to step on the petitioners or the respondents in the Hiddle case at all in this manner. My personal sense is that the statute is trying to understand, as you say, Justice Gorsuch, it's trying to understand whether discrimination happened. And I think the takeaway from Hicks and Reeves versus Sanderson is that, look, if you have this legitimate nondiscriminatory reason, let's not just fight over pretext and whether that happened or this happened. Let's just try to get the root of the issue, whether discrimination happened. And if I can just maybe tie it back to this case, the question is whether individual discrimination happened. It's not about whether, as the Sixth Circuit put it, there's some pattern or practice of group-based discrimination or some specific look at the status of the decision-maker here. I think it's about the individual circumstances in any individual case. Isn't it about whether the stated reason by the employer was true or, if not, whether it was because of race or sex or what have you? Well, I think, Justice Kavanaugh, that goes to, of course, steps two and three. And I think whether it's true or not, I think that this Court's precedents, I think, instruct that, look, if it's not true under Reeves, that doesn't necessarily require a finding or require direct verdict. Doesn't require, but often will lead that way. I thought McDonnell Douglas kind of dropped out once the employer stated a reason. Yes, yes. That's certainly what the D.C. Circuit has said. That's, I thought, what this Court had suggested in cases like a variety of cases. Yeah. And Justice Kavanaugh, I think that's right. And the employer usually states a reason in the answer. Well, yeah. And let me try to tackle that in two ways. I think first, pretty far afield from the question presented. Yeah, yeah. And I just want to be sort of mindful of that, but also provide a fulsome response here. The first point to your question is, I think that is a possible takeaway from Aikens. And certainly the D.C. Circuit and Brady did hold that. I think the sort of why I don't necessarily know if that can be resolved in this case, this particular case, is look, our client, our client here, Ms. Ames, lost on step one. And many other clients lose on step one. Sometimes you don't get to step two. It's not often, but sometimes you don't. And that's why I think there's a circuit split over whether there should be an additional requirement on step one. So all you want for this case is a really short opinion that says discrimination on the basis of sexual orientation, whether it's because you're straight or because you're gay or because you're straight, is prohibited and the rules are the same, whichever way that goes. That's right, Your Honor. That's all we need to say, right? I think that would be something. Well, I think you'd also have to say reverse or vacate. I want to look out for my client here a little bit. But certainly as to the reasoning, yes, I entirely agree. I think that this is a narrow question and it's a question of, is there an added burden? And if the answer, I think, under McDonald and under Title VII's text is no, then this goes back to the lower courts to resolve. Just as a footnote, it's not just whether discrimination was a reason, but was it a motivating fact, correct? Under the statute, it could be. It could be a legitimate reason, and as Justice Gorsuch said, but it still could have been based on race or sex or... Yes, yes. Yes, Justice Sotomayor. I think I entirely agree with that. I think that the takeaway from several of these court cases, like the Abercrombie and Fitch case, say, look, it needs to be the motivating factor. So I entirely agree. And I don't think this case would implicate that line of precedence. Thank you, counsel. Thank you. Justice Thomas, anything further? Justice Alito? Justice Kavanaugh? Justice Jackson? Thank you, counsel. Ms. Robertson? Mr. Chief Justice, and may it please the Court, the Court of Appeals applied a different and more difficult standard to Petitioner because it considered her a member of the majority. But Title VII draws no distinctions between plaintiffs based on their race, religion, sex, or other protected characteristic. That alone is reason to vacate the decision below. The Sixth Circuit's test would have been wrong if applied even-handedly. The Court required evidence, reason to suspect an employer usually discriminates against a group that the statute does not. And it required more evidence to make out a prima facie case than this Court has held as necessary, including McDonnell Douglas itself. That heightened standard risks screening out cases with merit and complicates litigation by focusing on whether to shift a burden of production that Ohio had already met in this case. The Court should vacate and remand for the Court of Appeals to apply the proper standards in the first instance, including to consider Ohio's alternative arguments for why summary judgment might still be proper. I welcome the Court's questions. In McDonnell Douglas, Justice Powell, the first, he said this may be done in setting out the prima facie case. This may be done by showing, one, that he belongs to a racial minority. What work does that do? We think that that first prong identifies the protected class to which the plaintiff belongs and therefore focuses the litigation on whether the discrimination occurred on the basis of that protected class. We don't think it does the work that the Court of Appeals and the other courts that have adopted the background circumstance thinks it does, namely that McDonnell Douglas was predicated on some assumption about the rate at which different groups were discriminated against. The Court has told us that the McDonnell Douglas presumption arises because of a different insight about employers, that they act for reasons and will be able to provide reasons, so that if this is the rare employer who can't come forward with any nondiscriminatory reason for their action, the reason becomes more likely discriminatory, and that is an insight that holds good regardless of the identity of the plaintiff. Of course, that's not to say that a plaintiff who makes out a prima facie case is necessarily going to trial. In virtually every case, an employer will come forward with some nondiscriminatory reason for their actions, and then the question will focus on whether that reason is pretextual or whether there's otherwise evidence to indicate that an employer acted for a discriminatory reason, and that itself is a difficult burden for plaintiffs to meet. We reject the Sixth Circuit's test because it's adding an additional atextual burden at step one that risks screening out cases that might otherwise satisfy the statute's standard for liability. Ms. Robertson, could you give us a little background about the EEOC's interpretation of the statute, because it has a different approach, right? No, the EEOC has a different approach than what the Sixth Circuit took. Yeah, yeah, sorry, I didn't mean than you do. I meant than the Sixth Circuit. Yes, the EEOC has rejected the background circumstances rule. It applies the same case, the one this Court articulated to McDonnell Douglas for all plaintiffs, and it's been consistent with that because it understands this Court's subsequent decisions in McDonnell and Burdine and Fernco to reject the idea that McDonnell Douglas turned on the race or identity of the plaintiff. And, you know, I asked before whether this would lead to a floodgate problem, as the Department says, oh, then you're going to all these people filing suits. The EEOC, am I remembering right, it was like 2001, and it's consistently had this interpretation of the statute. What has the EEOC's experience been? The EEOC has had this interpretation since 2006. The EEOC, to be clear, while it does investigate all charges, parties don't need the EEOC to conclude that there is reasonable cause to proceed. The EEOC will always issue a right to sue letter, but I will say that in our experience as an employer who regularly litigates these cases as a defendant, we don't need a higher prima facie case to weed out cases without merit. That's because in every case the government can provide a nondiscriminatory reason for its action, and so the case will proceed to step three, whether or not that reason is a pretext or whether or not we ultimately acted for discriminatory reason, and that in itself, as I said, is a high hurdle, and so if a plaintiff can't satisfy that bar, they won't go to trial. So we share Ohio's concerns with making sure that meritless cases don't reach trial. We simply think that raising the standard at step one would be exactly the wrong way to address that concern, because it would focus parties on a question that has often become ancillary by the time a court considers a motion for summary judgment, because during discovery, a defendant will often, virtually always, offer some reason for their action, be it through a deposition, through a declaration, some other paper evidence, and so for the court to focus on whether a plaintiff has triggered a burden of production that a defendant has already met strikes us as beside the point, and of course that's what the court said in Aikens and Hicks. That's what the D.C. Circuit has said, and we think to the extent that there is confusion about Douglas, Justice Gorsuch, it would be helpful for this court to clarify in remanding to the Sixth Circuit that because Ohio has already met its burden of production here, the court can and should proceed to the ultimate question of whether a fact finder could find discrimination. Yeah, that's, I'm sorry, go ahead. Go ahead. Well, I do want to pick up on that point, Ms. Robertson, that at least in many circuits, the step three inquiry on pretext has become kind of an absolute condition that has to be met. You have to show that the reason offered by the employer is pretextual to get to trial, and again, we've never held that. This court's never done it in a summary judgment context. I understand other circuits may do it differently, but many have done what I've described, which seems a little inconsistent with, as Justice Sotomayor pointed out, the motivating factor test and with the but-for causation test, where there are two possible causes. One might be non-discriminatory and another might be discriminatory. Any thoughts about that for us? I'm mindful that the court has before it a pending petition, and so I won't comment on whether what the Ninth Circuit did specifically in that case was incorrect. I will say that we understand that any plaintiff that can produce evidence from which a jury could infer discrimination should go to trial. Okay, thank you. Can I ask you about the government's experience in terms of court confusion? I mean, is it your experience that, at least with respect to step one, there's been sort of widespread misunderstanding of what is supposed to happen? I do think there has been confusion in the courts of appeals, and I think that the court in this could take two steps that would go a long way towards addressing that confusion. First, it can make clear that the first step of McDonnell Douglas should not screen out any case that might ultimately satisfy the statutory standard for liability. So what the Sixth Circuit did here, for instance, by asking for reason to think that an employer usually discriminates against a group requires evidence that a plaintiff wouldn't need to establish liability under the statute because, of course, even if an employer generally treats a plaintiff well, if a plaintiff has evidence that the employer discriminated against her, she should be able to proceed. So I hear you saying that first step is make sure you make clear that, you know, step one is a low bar. You're not proving your case at that point. Yes, I do think that that is another, that that is an important point. A plaintiff is not required at step one to prove discrimination. It's more likely than not. They need to prove at step one that the facts, if left unexplained, would make discrimination more likely than not. And that lack of explanation itself does significant work. Because if an employer cannot come up with a non-discriminatory reason, any reason, even an arbitrary reason for why it took the employment action it took, that in itself is highly probative of whether or not there was discrimination. And the additional facts necessary to prove discrimination in that circumstance would be, as this Court has said, quite minimal. I apologize for cutting you off. There were two things the Court could say. The second one I hit on earlier and Justice Kavanaugh asked about as well, which is clarifying that if an employer has met its burden of production, whether that employer had the burden in the first place is not something that the Court need answer. Instead, the Court can focus on the ultimate question of whether there was discrimination, including, of course, considering any evidence that suggests that the reason that the employer gave was pretextual. But of course, that would be going on to talk about step two in a way that really is a little bit outside the scope of this case, right? We simply think that in remanding to the Sixth Circuit, because Ohio on these facts has, the Court has already held, the Court of Appeals has already held, has satisfied its step two burden, it would be appropriate for the Court to say that the Court of Appeals can proceed directly to step three. Thank you. Would it be, the rule that the Sixth Circuit applied was apparently based on an intuition about the way in which most employers behave, and maybe it was sound at the time when McDonnell Douglas was decided. Maybe, as some of the amici have argued, it's no longer sound today. Suppose we say that that was an error. Would it be permissible for a court to transport that same notion into the subsequent steps of the McDonnell Douglas inquiry? In other words, in taking into account whether there's sufficient evidence to get by summary judgment, can a court take into account the race of the decision-maker and the race of the plaintiff? I think it's important to distinguish between two ways that a court might take race into account. The first is the way that the Sixth Circuit did, which is, tell me your race, and I will tell you how much evidence you need to produce, or I'll apply it in a different standard. That would be wrong at any stage in the proceeding. That's not to say that race is irrelevant in a race discrimination case, or that sex is irrelevant in a sex discrimination case. I think it's helpful to understand how that type of evidence comes in in practice. In our experience litigating these cases, it typically takes two forms. First, a plaintiff can introduce evidence that their employer has a history of discriminating against their particular group, be it a discriminatory pattern of hiring or firing, or a history of derogatory comments directed at a particular group. Second, courts can consider a plaintiff's identity to help them draw inferences from the evidence in the record, so comments that look neutral in a vacuum might take on a different valence when directed at a certain group. And just to give you an example of what that means, in Price Waterhouse, this court had no trouble understanding that when a male supervisor tells a female subordinate that her chances at promotion would be better if she wore makeup, wore jewelry, was less aggressive, that that comment invokes sex stereotypes. Whereas if an employer told a female subordinate, meet your deadlines, common sense would tell us that's not sex-based, absent some other evidence to suggest it is, like the employer doesn't enforce deadlines for male colleagues. So of course the court can consider that type of context and common sense inferences. What a court can't do is what the Sixth Circuit did here, which is draw inferences solely from the identity of the plaintiff and the court's own judgment independent of any evidence in the record about how frequently that group may or may not experience discrimination. Thank you, counsel. Is a protected characteristic on the part of the decision maker alone enough to establish a prima facie case? No, we don't think so, Chief Justice. And that hits at an oddity about the Sixth Circuit's opinion, is that it suggests that evidence that wouldn't be enough to make out a prima facie case suddenly would be if you change the identity of the decision maker. But because the prima facie case is hitched to step two and looks to what would happen if an employer couldn't come forward with any explanation, we think that whether or not the decision maker was of a particular identity or not, if they can't come up with any non-discriminatory reason for their actions, that alone is a strong signal of discrimination. Thank you. Justice Thomas? Justice Alito? Well, I want to follow up on the point that you were answering previously. So I do think it's an important point. When you say that some of what the Sixth Circuit appeared to be concerned about can be considered at a later stage of the McDonnell-Douglas process, that does not mean that the stereotypes based solely on the decision maker's race and the plaintiff's race are permissible. That's right. The court always needs to look at the evidence in the record before them. And we think that when the court is confronted with particular facts about a particular employer, of course that's appropriate to consider. And the fact that a plaintiff was a member of a group that this employer has historically discriminated against, of course, can be we wouldn't want the court to suggest otherwise in an opinion. Likewise, as we said in note one of our brief, this case doesn't have to do with the prima facie case in a pattern or practice case, where, of course, whether the employer usually discriminates is exactly the point. But the court should not, based on its own independent sense of which group experiences more discrimination or not, draw its own conclusions absent. Okay. So this is not a pattern and practice case. And yet you say that it would be permissible for a court at a later stage of the McDonnell-Douglas process to take into account the employer's hiring patterns. Yeah. So what does that what would that mean here? Suppose that the plaintiff said, look, they discriminated against me because I'm heterosexual. And here are five other instances where they did the same thing. Is that going to come in? Is the court going to have mini trials or mini summary judgment proceedings on all of these other alleged instances? I think there are two types of historical evidence about an employer's hiring or firing patterns that might come in. The first is statistical evidence of the sort that the court at McDonnell-Douglas said may be relevant at step three of the litigation. The second is any comparator evidence. So if a plaintiff can point to five similarly situated individuals of a different protected group that the employer treated differently, that would be relevant. Justice Sotomayor? Justice Jackson? Okay. Thank you, counsel. Mr. Geiser? Mr. Chief Justice, and may it please the court, Ohio agrees it is wrong to hold some litigants to a higher standard because of their protected characteristics. But that is not what happened in this case. When Governor DeWine took office in January 2019 and appointed a new cabinet-level director of the Ohio Department of Youth Services, the state's juvenile correction system, petitioner was an unclassified civil servant, effectively an at-will political appointee. She claims the department took two adverse actions against her in the first five months of the administration, denying her a promotion and demoting her because of her sexual orientation. But after discovery, she could not establish that anybody was motivated by sexual orientation or even knew her sexual orientation, nor the orientation of the unclassified political appointees, Ms. Frierson and Mr. Stojceviljevic, that she points to as comparators. In other words, she failed to make out a prima facie case under the first step of McDonnell Douglas that should apply to every Title VII plaintiff. She didn't provide evidence that, to quote Fernco, if otherwise unexplained, raises an inference of discrimination. Whether that evidentiary standard is framed as background circumstances, as in Parker, or circumstances which give rise to an inference of unlawful discrimination, as in Burdine, this court has said a prima facie case under Title VII must be complete enough for the court to enter judgment for the plaintiff before the burden shifts to the employer. Because the best reading of the Sixth Circuit judgment applies that standard, this court should affirm. If this court nevertheless holds petition or made out a prima facie case on these facts, then McDonnell Douglas has effectively two prongs, and the court will have made Title VII that unusual statute that presumes liability for employers and swallows what remains of at-will employment. I welcome the court's questions. Uh, do you think the Sixth Circuit's opinion is consistent with your argument here? I think, Justice Thomas, that's the best way to read what the Sixth Circuit was doing. My friends on the other side have language they can point to about additional or higher burden that we think this per curiam shouldn't be scrutinized on that level. But it does say that if the petitioner were of a minority, a different group, that the additional burden would not be necessary. So how is that consistent with your argument? Well, I think that what the court was doing was saying just going through the four elements that what McDonnell calls the sample pattern of proof wasn't enough in this particular case, because there wasn't any evidence that raised an inference of discrimination merely from those bare four facts. Do you think the concurrence got it wrong, too? Well, with great respect for Judge Kethledge, we think that he latched on to what Ms. Ames had said about the relative qualifications, and so Ohio sees it differently from Judge Kethledge. Mr. Geiser, I mean, you can say, well, there's language. I mean, I think that that's the absolutely critical language in this opinion. Because Ames is heterosexual, she must make a showing in addition to the usual ones for establishing a prima facie case. And then it says, you know, Ames's prima facie case would have been easy to make had she belonged to the relevant minority group here, gay people. So, I mean, this is what the court did. Well, and we can't retreat from what the court here said, but we think the best way to construe that language is consistent. But nevertheless, I think that— The best way to construe that language is, like, as the language says. Well, Justice Kagan, yes, the court said what it said. The important point is the prima facie step this court has laid out needs to be complete enough before the employer has any burden under Title VII to show an inference of discrimination. You agree that those passages are wrong? We're not defending the exact language there. This per curiam, we asked for— The exact language? You're defending something like that language? I mean, it's a little bit of a peculiar situation, isn't it? Because this is what the court said, and you're up here, and I don't know exactly what to make of this. Do you think that that's right, or do you think that that's wrong? I think the idea that you hold people to different standards because of their protected characteristics is wrong. And if there's any upshot from this case, let reverse discrimination completely fall out of the federal reporter. So you agree with Petitioner and the Solicitor General on— On that major premise point. But we don't think— Which is the question presented? Well, we think that the question presented here is, what must a plaintiff do to show at the prima facie step that there's an inference of discrimination? And we don't think Ms. Ames did that, and we think that saying that what the United States says, that just eliminating the two most common reasons— That could be all sorted out on remand, right? I mean, all we have before us is really what Justice Kagan was reading, I thought. Well, our argument is that this Court reviews judgments, and the judgment was correct. I think that everyone here agrees that everyone should be treated equally. All right, so what is that treatment? What must a plaintiff do in your view? So under Reeves, this Court said, provide enough evidence that there's an inference of discrimination—this is also footnote 7 of Burdine—legally mandatory presumption of discrimination. And then the Court said in— Do we not have the steps anymore within, you know, that he was a member of a protected class, that he suffered an adverse employment action, that he was qualified and was replaced by someone else? Is that not how you conceive of this, as like the statement? You seem to be suggesting that evidence has to come in at this very first stage, and you have to really establish that you have been discriminated against, and I had not understood the first stage to be that onerous. Well, we don't think it's onerous, but this is its summary judgment. This is after complete discovery, document production, here I think we had six depositions under oath. If you can't show any evidence that the employer was motivated by a protected characteristic when they took the adverse action, and certainly if you can't show an adverse action at all, that's not enough to create any burden of production for the employer. And that sample pattern of proof, the four elements that McDonnell Douglas lays out, courts have adapted that under this court's guidance. So in Swearer-Kiwitz v. Surima, this court said before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the required prima facie case in a particular case. And so what those four elements happen to be, this court has directed lower courts to never treat them as an exclusive or — I understand, but I guess, you know, what's happening is that we have a burden-shifting test that we have indicated on several occasions is sort of graduated in terms of how you get to the ultimate question. And I thought that what was necessary to shift the burden to the employer to come up with the reason or explain what was not supposed to be all the evidence that you have related to discrimination, that it was just enough that you say things or have enough evidence that establish an inference, you know, that you could more likely than not, and then the burden shifts and the employer really has to explain what's going on here. Well, I agree with your characterization, Justice Jackson, and that's what this court said in Reeves, where the court made clear that if you have enough evidence at the prima facie stage that you could, looking alone at that grant judgment for the plaintiff, then the employer has a burden. So what was the failing —  Oh, sorry. Go ahead. I was just going to — I just wanted to clarify what you were saying to Justice Kagan and Justice Kavanaugh. Do you agree that if the law in the Sixth Circuit is, as Judge Kethledge's opinion describes it, that it's wrong? I think that if that were an accurate characterization, yes. So this whole dispute, then, is really just about how we interpret what the Sixth Circuit said? No, I don't think that's alone what's at issue, Justice Barrett. I think, you know, the case that we cite, I think, is a better description. You know, this procurium opinion, we asked the department for oral argument, and my friends on the other side, too, asked for oral argument. The court just came out with this decision two weeks — or two months after the court  So it might have been slappy. Maybe it wasn't stated well. But you agree that if it means what it says, what Justice Kagan read to you, or if Judge Kethledge's understanding was correct, you agree that that's wrong? We agree. Ohio agrees that it's wrong to treat people differently. So if we said someone like Ms. Ames, who is a member — it doesn't matter if she was gay or whether she was straight, she would have the exact same burden and be treated the exact same way under Title VII if she sued as someone who was gay and argued that they were discriminated against under Title VII. Same. I think that she should have the same burden and that the best reading of what the Sixth Circuit gave — Well, no, no, no. I'm just asking you what you think of the statute. So that is what you think of the statute. And same for someone who brings a race discrimination, someone who brings — you know, a woman or a man who brings a sex discrimination suit on the basis of — a discrimination against the basis of sex. All of those, you agree that the court should apply the exact same burden, treat them the exact same way? We agree with that, Justice Kagan. The only thing I would add is it can't simply be the tick through the mechanical rubric and then the employer has the burden to disprove liability under Title VII. That's inconsistent with the text of Title VII. And we think what this court said — I would point the court to page three of my friend's reply brief. They cite this per curia — this unpublished decision from the Third Circuit that really re-articulates what the United States says at page 20 of their brief. And what they say at the top of page 20 is that the fourth element of the prima facie case should just be circumstances which give rise to an inference of discrimination. If that's the rubric that this court says it should apply in every case, then I think Ms. Ames hasn't made out a prima facie case. So you're not worried about — you are not concerned. You're on the same page as your friends on the other side when it comes to the central question of how we should interpret Title VII. Your concern is that we'll say something more about what kind of evidence any plaintiff has to show, no matter what group they belong to. Yes, our — But if we didn't say that, you would be satisfied with an opinion that just said everyone's treated the same under Title VII. Well, I think that courts could be misled by hearing that, that basically the prima facie case, as the National Employment Lawyers Association explicitly asks for, doesn't really play a factor in McDonnell Douglas. McDonnell Douglas is a judicial gloss on the statute that is trying to make it easier for plaintiffs, but it's not such that the burden is always and everywhere on the regulated party. The Title VII standard still requires the plaintiff to make out the burden of proof. Sorry, why — why is it so hard on an employer to just say why they didn't hire someone? Well — I mean, you're making it sound as if by making out a prima facie case, it's unfair to the employer to say, you didn't hire them, explain why. Well, two responses — They don't have to prove the why. Yeah, two responses to that, Justice Sotomayor. Number one, the text of the statute allocates the burden not to disprove liability, but to prove liability. And so the prima facie case needs to be a complete case enough at that circumstantial stage before the employer has a burden under the text. And then secondly, doctrine. This Court has said that that case needs to be enough to create a legally mandatory inference of discrimination. But you seem to be putting this on its head. You seem to be saying that they have to be able to win the case on the prima facie evidence. That — that's what you're suggesting. If — Because what Judge Ketledge basically said, you have a situation here where she alleged she was a member of the majority group, she was a 20-year-old employee, great reviews, and then all of a sudden she's not hired, and someone's hired who's gay, doesn't have her level of college experience, and didn't even want the job. Something's suspicious about that. It certainly can give rise to an inference of discrimination. Now whether those facts are enough to make out that the employer's proffered reason is pretextual or pretextual in some way, the Court hasn't gotten to that yet. Well, so Justice Sotomayor, I think the really crucial fact here is every circuit, and we point this out in our bio, every circuit has said that if the employer isn't even aware of the protected trait, it's not possible to infer that they were motivated by that protected trait. And that doesn't come in at prong two of the McDonnell-Douglas burden shifting. You don't have to disprove the negative. It's the burden on the plaintiff at very minimum to say they knew about your protected characteristic. And what the evidence here showed was that no one knew Ames or Frierson's sexual orientation. The petition appendix at 32A, the district court made a factual finding that has not been appealed here, that no one knew Ms. Ames' sexual orientation at the time of the relevant employment decisions. And even though others may have suggested that in the record to other people, and that's at JA 46 and 48. General, I guess my reaction to a lot of what you're saying is this. You say you agree with your friends on the question that we took this case to decide. The question presented is whether a majority group plaintiff has to show something more than a minority group plaintiff. Here, whether a straight person has to show more than a gay person. Everybody over here says no. You say no too. That was the question that we took the case to decide. And now you're asking us to opine on various other aspects of how the McDonnell-Douglas test works, what we should think of the first step as doing, then what we should think of the second and third steps as doing that are, you know, really not intertwined at all with that question. Whatever McDonnell-Douglas does, it does for majority group plaintiffs and minority group plaintiffs alike, is all that we have to say. Why shouldn't we approach the case in that way? Well, I think there are two responses to that, Justice Kagan. First of all, while we all agree that everyone should be treated equally, we don't agree about what that prima facie step actually looks like when we do that. Yes, I know. That's exactly what my point is. But that's orthogonal to the question we took. So, I mean, why would we use this case, which is about the whether a majority group plaintiff has an extra burden, to opine on a range of things that have nothing to do with that question? Well, so what the Sixth Circuit did here, this is my second reason, Justice Kagan, if the first one doesn't satisfy you, is exactly what we think every court should do, ask for enough evidence to raise an inference of discrimination. And simply going through those four prongs, copy-pasting McDonnell Douglas with subbing out racial minority for any particular protected group, doesn't do that. It doesn't satisfy what this Court said in Reeves and Burdine in footnote 6 and 7. And so our thought is the Court should still affirm, because what the Sixth Circuit's judgment did here is what we ask every court to do at the first step of McDonnell Douglas, even if we agree that saying that an additional burden is a mischaracterization of what this Court has said in the past. Mr. Geiser, I guess maybe another way of coming at perhaps the same question is what would be wrong with a judgment holding that everybody is treated equally at the first step of McDonnell Douglas if it applies at summary judgment, we've never so held, but let's assume, and that you would then on remand be able to argue about what that fourth prong of the first prong of McDonnell Douglas means for everybody. What's enough circumstances to give rise to an inference of discrimination? We wouldn't say anything that would prohibit you from making these arguments to that court in the first instance. And normally, of course, we are a court of review, not first views. Justice Ginsburg would like to remind us. Well, Justice Ginsburg was very wise, Justice Gorsuch, and we don't want to make assumptions either way. I think that the Court should still affirm, I'm defending the judgment on my client, but if the Court is going to say anything about what that first prong happens to mean — Well, I'm positing a circumstance where we don't. Affiant saith not anything about what that first prong means, other than to say it applies the same to everybody. Well, we agree that the Court should say that at the very, very minimum, but if — We're in radical agreement today on that, it seems to me. The counsel before us seemed to be in total agreement. And then, if your argument is, as applied to everybody, she fails on the fourth prong of the first prong of McDonnell Douglas, perhaps the Court should take a look at that before we do. What would be wrong with that? Well, I think there's something in between those two levels of abstraction, Justice Gorsuch. We agree on that first level, and we think that the Court can avoid that sort of third level down. But the second level here — Boy, I'm lost. We have four prongs and three prongs and four levels. Just what's wrong with the opinion I outlined to you? Well, I think a lot of courts are going to get the misimpression that that first prong of the Prima Facie case, that McDonnell Douglas step one, if it applies equally to everyone and the Court saith nothing further about that, that it just means the burden is on the employer to produce evidence in every case. No, no, no. Why would that be? We would say — I mean, you know, as the government points out, you point — everybody points out, you've got to show you're a member of a protected class, one. Two, who's qualified for the relevant position. Three, was subject to an adverse employment action. And four — and this seems to be where the dispute is — was taken under circumstances which gave rise to an unlawful discrimination. And you say that's not met because the relevant decision-makers didn't know the plane of sexual orientation. Interesting argument. Not presented here. Let a lower court pass on it first. Why wouldn't that be a wise course for this Court to follow? I think it would be wise if the Court adopted the four prongs read just as you read them, Justice Gorsuch. And if the Court doesn't want to say anything more about that, we still think the Court can affirm, but if the Court is going to make sure to say what is at the top of page 20, I think that would be good guidance for this Court to give. I thought — this is not what I think we should do, but I'm just going to throw it out there, which is if we talk about McDonnell-Douglas, I thought once the employer stated a reason, the whole thing kind of drops out. And then, as Justice Gorsuch says, you're just figuring out was there — was it based on the stated reason or was it based on a prohibited characteristic? Well, I think there are two issues with that. Number one, if you have a case like this one where the employer has good evidence that they didn't even know the relevant protected characteristic, the employer shouldn't have to say, if I want to make that argument, I also have to forego providing a legitimate reason if I want to be able to win on that first fundamental threshold. So under the Brady opinion in the D.C. Circuit, I think there's a really good argument that McDonnell-Douglas no longer applies. This Court has already said it in Aiken at trial, and it doesn't apply because this Court said it in Surrema at motion to dismiss. What does it do in summary judgment? I still think there needs to be room for the employer to proffer a good reason and use that as an alternative grounds for, and the plaintiff didn't even meet their prima facie case. In other words, the employer shouldn't be forced to choose one of those two possible litigations. Well, we fired the person because of X, and we didn't even know they were, you know, whatever the characteristic is. Well, I think — I mean, I don't know if you — calling it prima facie, I'm far afield, but, you know, as you're aware, I don't think that's pretty — very useful to — how to figure out these cases once the employer has stated a reason. So I'll leave it there, though. I think the Court should allow employers to be able to make that alternative argument. They didn't make a prima facie case, and we have a good reason, and either as a grounds on which — Well, I think there — I agree with that, but they're both arguments for why it wasn't sexual orientation or their race or what have you. It was based on something else. Well, I think they both do go to the ultimate question, Justice Kavanaugh. I do think, though, that one is a very negative shield sort of argument, and the other is an affirmative sword sort of argument, and the prima facie case is there to capture, was there enough evidence to show a sort of freezing time and place with no answer at all from the employer that Title VII elements could be met, that there could be an inference of discrimination at the first step. And I don't think the Court should retreat from any of those statements that it's made from Burdine to Fernco to Reeves. Okay. Thank you. Thank you, Counsel. Further? Further? No? Thank you. Rebuttal? Mr. Wang? Thank you, Mr. Chief Justice. I'll be very brief. I just want to conclude, I think, with several members of the Court have talked about this theme, and it's actually something that my co-counsel, Mr. Gilbert, and I talked about when entering the Court this morning, which is, I think, what this case is all about. And those are the four words on the side of this building, equal justice under law, equal justice under law. Now, I know that sometimes we don't fulfill that promise. I understand that. But at the heart of this case, at bottom, all Ms. Ames is asking for is equal justice under law, not more justice, not more justice, but certainly not less, and certainly not less because of the color of her skin or because of her sex or because of her religion. We're simply asking for equal justice under law because I think that's what Title VII says, and I think that's consistent with what this Court has held in numerous cases, and it's consistent with Congress's intent in passing a civil rights law to protect the civil rights of all Americans. Thank you, Counsel. The case is submitted.